Eugene BIGBIE, et al., Plaintiffs,

v.

LOCAL 142, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, et al., Defendants.

No. 81 C 4507.

United States District Court,
N. D. Illinois, E. D.

Dec. 8, 1981.

Supplemental Memorandum Opinion and Order—Jan. 12, 1982.

Mark B. Bigelow, Chicago, Ill., for plaintiffs.

Edwin Benn, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Chicago, Ill., for defendant Local 142.

Lawrence J. Casazza, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Harold Abrahamson, Michael C. Adley, Abrahamson, Reed & Tanasijevich, Hammond, Ind., for defendant Artim Transportation System, Inc.

SHADUR, District Judge.

## MEMORANDUM OPINION AND ORDER

Eugene Bigbie and several fellow employees have sued their union, Local 142, International Brotherhood of Teamsters ("Union"), and their employer, Artim Transportation System, Inc. ("Artim"). Complaint Count I, asserted under Labor Management Relations Act § 301 ("Section 301," 29 U.S.C. § 185), claims (1) a breach by Artim of its collective bargaining agreement with Union and (2) a breach by Union of its duty of fair representation. Complaint Count II, grounded upon Labor-Management Reporting and Disclosure Act § 101(a) ("Section 101(a)," 29 U.S.C. § 411(a)), is based solely on a claimed omission by Union. It alleges a violation of plaintiffs' rights to attend Union's membership meetings and to participate in deliberations and vote on the business of such meetings.

Both Union and Artim have moved to dismiss or for summary judgment. Each asserts the following arguments among others:

(1) Count I is barred by the applicable statute of limitations.

(2) Count II is precluded by plaintiffs' failure to exhaust their internal union remedies before suing.

Because this Court finds the first of those contentions sound but the parties have provided insufficient information to deal with the second, defendants' motion to dismiss Complaint Count I is granted, but decision is deferred on Union's summary judgment motion as to Count II.

### Facts [1]

#### Count I

About May 9, 1979 Artim told plaintiffs they would be laid off indefinitely effective June 1. Plaintiffs and other Artim drivers could, however, retain their employment if they agreed to be paid on a percentage rather than an hourly basis. That action by Artim assertedly violated the Artim-Union collective bargaining agreement.

Plaintiffs then requested Union to file a grievance on their behalf, but Union declined to do so. Union's failure to process plaintiffs' grievance was allegedly a violation of Union's duty to provide fair representation to its members.

Plaintiffs request an injunction compelling Artim to reinstate plaintiffs to their hourly positions as drivers. They also seek compensatory and punitive damages against both Artim and Union.

#### Count II

In November 1979 Union held a meeting to discuss and vote on acceptance or rejection of Artim's action to change hourly drivers to percentage drivers. Such a change would involve an amendment to the collective bargaining agreement. Count II asserts that Union and its officials purposely did not notify plaintiffs of the meeting, though all plaintiffs were members of Union in good standing. Union's affidavit treats only with plaintiffs' not having pursued intra-union remedies. Both parties are thus deficient in their submissions on Union's summary judgment motion.

### Count I

Both Union and Artim have moved to dismiss Count I because this action was not filed until August 7, 1981, some 21 months after the last relevant event took place. They contend that limitations bar plaintiffs' claim under the doctrine of *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) ("*Mitchell*").

State law provides the applicable statute of limitations in Section 301 actions like Count I. *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). *Mitchell*, 101 S.Ct. 1564, held that a suit for breach of the duty of fair representation is "analogous to an action to vacate an arbitration award."[2] Combining those principles, the *Mitchell* Court applied the New York Arbitration Act's 90-day statute of limitations to bar the employee's fair representation suit.

All the relevant events leading to this action took place in Indiana, whose statute of limitations would therefore apply under Illinois choice-of-law rules. Indiana's arbitration act, directly analogous to the statute held applicable in *Mitchell*, provides a 90-day period in which actions must be filed to vacate arbitration awards. Indiana

---

**1.** For purposes of deciding the motion to dismiss Count I, the "facts" alleged in the Complaint are taken as true. As for Count II, plaintiffs have not responded to Union's motion with any affidavit establishing the Complaint's charges as to Union's intentional exclusion of plaintiffs from voting at its membership meetings, or stating when plaintiffs learned of such claimed expulsion. Defendants have not dealt with any of the relevant factual issues (except plaintiffs' failure to invoke intra-union remedies) either.

**2.** No employee action will lie under Section 301 for an employer's "breach of a labor contract" absent a viable duty-of-fair-representation claim against the union. *Mitchell*, 101 S.Ct. at 1563–64. This opinion need therefore discuss only the latter cause of action.

Code 34–4–2–13.[3] If *Mitchell* governs here, plaintiffs did not timely file their Section 301 claim and Count I is time-barred. *Accord, Davidson v. Roadway Express, Inc.,* 650 F.2d 902 (7th Cir. 1981).

Plaintiffs seek to distinguish *Mitchell.* They say at page 4 of their responsive brief:

> [*Mitchell*] involved a case wherein there had been a final and binding adjudicated decision within the confines of the grievance procedure. Logically, the Court applied the limitation period in the state statute to vacate an arbitration award. However, where there is no final and binding adjudicated decision to contest, there no longer exists any rationale for applying a statute dealing with the vacating of an arbitration decision.

That suggested distinction is unpersuasive given the rationale of *Mitchell* and our Court of Appeals' later decision in *Davidson.* There the Court followed and applied *Mitchell* without focusing as a critical matter on the stage of the grievance procedure at which plaintiffs' claim was defeated. As the *Davidson* Court said, 650 F.2d at 903:

> In *Mitchell* the Supreme Court held that a suit against an employer under Section 301 can be most closely analogized to an action to vacate an arbitration award because the employee must first establish a flaw in the binding grievance procedure before being entitled to reach the merits of his contract claim. *Mitchell,* 101 S.Ct. at 1563–64.

■ Under that analysis it is quite irrelevant at what point in the contractual grievance procedure Union's breach of its duty of fair representation has occurred. Whether Union has failed to file any grievance at all (as alleged here) or has failed to represent the employee fairly before the grievance committee (as in *Davidson*)[4] or has failed to appeal from an adverse arbitration decision (as in *Mitchell*) has no significance in relation to the substance of a Section 301 claim: whether Union has breached its duty of fair representation. From the employee's viewpoint a union's refusal to launch the grievance procedure is just as "final and binding" as a refusal to carry forward a grievance at any point after the procedure has been invoked. What is significant in each situation is that the *Mitchell* Court chose to analogize the action to one vacating an arbitration award, rather than applying the statute of limitations for an action enforcing a written or oral contract. It would be absurd to have a 90-day limitation period in one such situation and a five-year period in another representing the other side of the same coin.

■ Count I is therefore dismissed as to Union as untimely filed. Because plaintiffs' claim against Artim is viewed as derivative as a matter of law (see n.2), Count I is dismissed as to Artim as well.

*Count II*

Because Union does not controvert Count II's allegations in that respect,[5] this opinion

---

**3.** If Illinois' limitations statute were to apply the result would be identical, Ill.Rev.Stat. ch. 10, § 112(b). Plaintiffs' argument that the statute should not be looked to because it is in fact inapplicable to collective bargaining agreement arbitration awards (*id.,* § 112(e)) misses the thrust of *Mitchell.* That decision simply *analogized* fair representation actions to the vacation of arbitration awards—it did not require that the statute actually be available for that purpose. Judge Marshall of this District Court recently confirmed the applicability of the Illinois statute's limitation period in a post-*Mitchell* decision. *Stevens v. Gateway Transportation Co.,* No. 79 C 2288 (N.D.Ill.Sept. 22, 1981).

**4.** Plaintiff in *Davidson* sought to argue that the grievance procedure in which he had allegedly been inadequately represented was not an "ar-

bitration" procedure. In a footnote comment the Court of Appeals pointed to the fact that the procedure was effectively an arbitration whatever the label.

**5.** It is true that the penultimate sentence of Fed.R.Civ.P. 56(e) does not permit a party opposing summary judgment to "rest upon the mere allegations or denials of his pleading." But where as here *Union's* affidavit in support of its motion is entirely silent on the matters referred to in the text, this Court is loath to determine that there is no genuine issue on that score. Both sides have really been delinquent here, and final judgment against plaintiffs would be a harsh result where they could reasonably have believed they did not have to meet the issues uncontested in Union's affidavit.

will assume that Union's failure to notify plaintiffs of the November 1979 membership meeting was intentional and a violation of plaintiffs' rights under Section 101(a), which guarantees "[e]very member of a labor organization . . . equal rights . . . to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings. . . ." Under the circumstances the Court cannot determine whether plaintiffs' failure to exhaust internal union remedies defeats their claim.

Under Section 101(a)(4) Union cannot limit the right of union members to sue, except:

> . . . that any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.

By affidavit of its Secretary-Treasurer Donald Sawochka ("Sawochka") Union has established—and plaintiffs have not contested—that defendants have not pursued the union appeals procedures as to the claimed violation of their Section 101(a) rights. Nor is there any dispute as to the reasonableness of the hearing procedures or satisfaction of the four-month limitation.

■ Plaintiffs point out however that Section 101(a)(4)'s exhaustion requirement is discretionary and may, under appropriate circumstances, be waived. *Ryan v. IBEW*, 361 F.2d 942, 945–46 (7th Cir. 1966). Under the cases such discretion may properly be exercised in favor of waiver in either of two general circumstances:

> (1) when the action of a union is, in the plaintiffs' words, "indisputably illegal or void"; *see, Wiglesworth v. Teamsters Local Union No. 592*, 552 F.2d 1027, 1030 (4th Cir. 1976); *Libutti v. DiBrizzi*, 337 F.2d 216, 219 (2d Cir. 1964); and

> (2) when the appeal would be inadequate, illusory or futile; *see, Semancik v. United Mine Workers of America District No. 5*, 466 F.2d 144, 150–51 (3d Cir. 1972);

*Verville v. Int'l Ass'n of Machinists & Aerospace Workers*, 520 F.2d 615, 620 (6th Cir. 1975).

■ Examination of the cases applying the "voidness" doctrine discloses the inadequacy of both parties' submissions here. Those cases excuse exhaustion of intra-union remedies "when conceded or easily determined facts show a serious violation of the plaintiff's rights." *Wiglesworth*, quoting *Libutti*. What do we have here? Union does not controvert by affidavit plaintiffs' allegations of deliberate exclusion from union democracy; does this Court assume that plaintiffs have stated the facts accurately or that their failure to support the allegations by their own affidavit represents a failure of proof? Plaintiffs do not tell us when they learned of the claimed exclusion or anything else about the time sequence of the membership vote and the effectiveness of the change in the collective bargaining agreement, nor does Union deal with the latter question or the question whether the union's action could have been undone had plaintiffs timely pursued their remedies within the union. There may be a host of other relevant facts—but these suffice to demonstrate the poverty of *both* parties' submissions on the current motion.

■ Because further submissions are required, this Court will treat with the other branch of the waiver-of-exhaustion doctrine. It consistently involves showings that the Union has taken a consistent position against that of the plaintiff, as in *Verville*, or that the union hierarchy was in the hands of bitter enemies of the plaintiffs, as in *Semancik*. No evidence whatever has been advanced by plaintiffs for any such finding, while Union has proffered the uncontroverted Sawochka affidavit that plaintiffs did not exhaust reasonable intra-union remedies. Subject only to the possibility that the further submissions already referred to may establish facts showing futility of resort to intra-union remedies, plaintiffs must fail on that score.

### Conclusion

For the reasons stated in this memorandum opinion and order the Union-Artim

motions to dismiss are granted as to Complaint Count I. As to Count II Union is directed to file further affidavits in support of its summary judgment motion on or before December 22, 1981, failing which its motion will be denied. If it does file such affidavits, plaintiffs are given until January 8, 1982 to file counter-affidavits, and the Court will then rule on the motion at 9:15 a. m. January 25, 1982.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

Eugene Bigbie and several fellow employees have sued their union, Local 142, International Brotherhood of Teamsters ("Union"). Count II of their Complaint, grounded upon Labor-Management Reporting and Disclosure Act § 101(a) ("Section 101(a)," 29 U.S.C. § 411(a)), alleges a violation of their rights to attend Union's membership meetings and to participate in deliberations and vote on the business of such meetings.

This Court's December 8, 1981 memorandum opinion and order (the "Opinion") deferred decision on Union's motion for summary judgment on Count II, pending further submissions by the parties. Each has now provided additional affidavits. For the reasons stated in this supplemental opinion Union's motion is denied.

Union filed the affidavit of its Secretary-Treasurer Donald Sawochka ("Sawochka")[1] that states a plausible explanation save in one important respect: It omits any statement that plaintiffs were allowed to participate in the November *1979* "mail ballot referendum . . . held to approve the changes in the collective bargaining agreement to provide for percentage rather than hourly wages." Union's counsel's responsibilities to the Court should have produced greater candor on that score. Instead they prepared Sawochka Affidavit Paragraph 3

(dealing with the 1979 action) in a way that, were it a securities prospectus, would have created an SEC Rule 10b–5 violation ("omits to state a material fact necessary in order to make the statements made . . . not misleading"). It was left to the Court to ferret out the truth by contrasting Paragraph 3's silence on the subject with Paragraph 4's statement about the second referendum a year later (emphasis added):

> As promised, a second referendum was held by mail ballot during November, 1980. On November 26, 1980 the Union mailed ballots to all employees of Artim (*including the Plaintiffs*) asking them to approve or disapprove the continuation of the percentage payment.

In any case plaintiffs' counteraffidavits state specifically that:

(1) Plaintiffs were *not* informed of or allowed to participate in the 1979 vote, which passed by a 16-vote margin.

(2) Had plaintiffs and other laid off hourly employees been allowed to vote, the outcome would have been affected.

(3) When after the vote plaintiff Bigbie learned of the matter and inquired of Sawochka, the latter said that plaintiffs weren't allowed to vote because Sawochka knew they would have voted "no." When the vote issue was raised at a following regular Union meeting:

> Sawochka responded by saying that he would not discuss this with us in words to the effect that the Union had its lawyers sitting on their can and we had our lawyers, so the Union would put their lawyers to work earning some of their money and we could let our lawyers earn their money. I was left with the clear impression that there was no remedy within the Union for this problem.

---

1. Union's counsel prepared an insufficient affidavit for Sawochka's signature. Verification that statements are "true to the best of my knowledge and belief" do not confirm the accuracy of those statements in fact. How is the trier of fact to know the basis for the affiant's "belief"? Bald unsupported statements of "be-

lief" would not be heard from the witness stand, and they do not satisfy the requirements of Fed.R.Civ.P. ("Rule") 56(e) for "such facts as would be admissible in evidence." Use of the "best of my knowledge and belief" locution may be common, but it is loose and impermissible practice.

It is worth noting that affidavits of two plaintiffs state they were not included in the *1980* referendum either (a statement at odds with the representation in Sawochka Affidavit Paragraph 4). If that fact is material (an issue not necessary to be decided at this time), there is a "genuine issue" under Rule 56(c).

True enough Union members are bound to know the intra-union remedies available to them, rather than looking to Union officials for that information. *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919, 928 (7th Cir. 1974); *John v. Nabisco, Inc.*, 80 C 813, slip op. at 9 n.2 (N.D.Ill. July 22, 1981). Thus the Sawochka failure to identify the available procedures is not dispositive. Nonetheless it is probative on the deliberate exclusion from union democracy charged in the Complaint and confirmed by plaintiffs' affidavits.

On the supplemental submissions Union has failed to negate the existence of any "genuine issue of material fact" so as to require this Court to exercise its discretion by compelling plaintiffs' exhaustion of remedies under Section 101(a)(4). Drawing all inferences in plaintiffs' favor as required on Union's summary judgment motion, this Court could reasonably determine that:

(1) Union's ·calculated exclusion of plaintiffs from participating in the November 1979 vote was "indisputably illegal or void."[2]

(2) Whether or not that was the case, plaintiffs might not have been able to obtain complete relief had they pursued any available intra-union remedies.

Union's motion for summary judgment on Count II must be and is denied. At the status hearing previously set for 9:15 a. m. January 25, 1982 the parties are directed to apprise the Court of steps taken and to be taken toward readying this matter for trial.

2. It may be observed parenthetically that Union has not at all addressed the question whether its By-Laws requirement (Article 27, Section 1) that the "Secretary-Treasurer shall call a meeting at which the membership shall determine and authorize the bargaining demands to be made" is satisfied by a mail ballot of the type

conducted by Union. In corporate law, at least, "meetings" must be just that to permit the interchange of ideas and the opportunities for persuasion, to make sure that all votes are fully informed. Whether that concept applies here is an issue that remains open for future determination.