Shirley METZ, Plaintiff-Appellant,

v.

TOOTSIE ROLL INDUSTRIES, INC., and Local Union No. 1, Bakery, Confectionery and Tobacco Workers' International Union of America, Defendants-Appellees.

No. 82–2945.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1983.

Decided Aug. 16, 1983.

Certiorari Denied Jan. 16, 1984. See 104 S.Ct. 976.

Melissa J. Auerbach, Cornfield & Feldman, Robert N. Sodikoff, Greenberg Keele

Lunn & Aronberg, Chicago, Ill., for defendants-appellees.

Richard J. Puchalski, Doss, Puchalski, Keenan & Bargiel, Ltd., Chicago, Ill., for plaintiff-appellant.

Before WOOD and CUDAHY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.[*]

CUDAHY, Circuit Judge.

This appeal involves the timeliness of an action brought against an employer both for breach of a collective bargaining agreement and for retaliatory discharge and against a union for breach of its duty of fair representation. The district court dismissed the complaint and we affirm.[1]

## I.

On June 12, 1980, while employed by Tootsie Roll Industries, Inc. ("TRI"), the appellant, Shirley Metz, was injured at work.[2] Approximately six months later, on January 15, 1981, she was discharged by TRI for failing to return to work. Appellant apparently thought that the discharge was not for just cause and, upon discharge, notified Local Union No. 1, Bakery, Confectionery and Tobacco Workers' International Union of America (the "Union"), of her grievance.

The appellant was a member of the Union and entitled to the benefits of its collective bargaining agreement with TRI. That agreement provided that management was empowered to discharge employees only for cause, that discharge cases were subject to the grievance procedure, and that all grievances had to be filed within five days.[3]

---

[*] Honorable Anthony J. Celebrezze, Senior Circuit Judge for the Sixth Circuit, is sitting by designation.

[1] Appellant's motion to supplement the record on appeal is also hereby granted.

[2] For purposes of this appeal, the facts alleged by the appellant in her complaint are assumed to be true. *See* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1368 (1969).

[3] The collective bargaining agreement provided, in relevant part:

ARTICLE 7
Stewards—Grievances—Arbitrations
\*    \*    \*    \*    \*    \*
Section 2. In the event a grievance or dispute arises at any time over wages, hours or working conditions, the Steward upon proper notification to their immediate Department Foreman, shall be given permission to settle, and/or observe grievances.... All grievances must be filed within five (5) days.

The Union failed to take action to initiate the grievance procedure. The only action it apparently took in the matter was to write a letter to TRI on May 5, 1981, stating that the appellant's discharge was in violation of the collective bargaining agreement. Although Metz alleged that she repeatedly complained, the Union failed to process her grievance. The Union has not taken any further action from May 5, 1981, to the present.

Metz filed this suit against TRI and the Union, the defendants-appellees, on June 23, 1982, in the district court for the Northern District of Illinois. The complaint alleged both federal and state law claims. The state law claim was cognizable only under the district court's pendent jurisdiction. The federal law claims include both a claim against the Union for breach of its duty of fair representation and a claim against TRI for breach of the collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The state law claim is based upon the allegedly retaliatory discharge of the appellant by TRI for filing a workmen's compensation claim under the Illinois Workmen's Compensation Act.

\* \* \* \* \* \*

In the event the dispute or grievance has not been satisfactorily settled within three (3) working days, the Director of Human Resources or his designated representative shall give his answer in writing within five (5) days thereto, to both the employee and his Shop Steward, or the employee and the Business Representative, as the case may be. Section 3. In the event the dispute or grievance has not been satisfactorily settled between the above parties, it shall, within five (5) days, be presented in writing to the President of Local Union No. 1, Bakery, Confectionery and Tobacco Workers International Union, AFL–CIO–CLC, or his designated representative, and the Vice-President in Charge of Manufacturing Operations, and the International Representative of the BC & T, AFL–CIO–CLC in attendance.

Within five (5) days thereafter, a meeting between the President of Local No. 1, BC & T, AFL–CIO–CLC, or his designated representative and the Business Representative of the Union who services the employees who presented the grievance, and the Director of

The appellees filed motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and argued that the federal law claims were barred by the applicable statute of limitations. TRI gave two reasons for dismissal of the state law action. The first was a lack of pendent jurisdiction given the dismissal of the federal action. The second was based on documents attached to the motion to dismiss which indicated that the appellant did not file a claim for workmen's compensation until *after* she was discharged.

The district court dismissed the entire complaint with prejudice for "reasons set forth in the defendants'[-appellees'] memoranda." Plaintiff-appellant's motion to the district court to reconsider and clarify was denied and this appeal ensued.

## II. *The Federal Law Claims*

### A. *Applicable Statute of Limitations*

A suit by an employee against a union for breach of the duty of fair representation and an action against an employer under § 301 of the Labor Management Relations Act for breach of the collective bargaining agreement are inextricably interdependent. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their dis-

Human Resources and the Director of Labor Management Relations of the Company, or his designated representative and the aforesaid Production Manager, Director of Engineering, or Warehouse Manager, as the case may be, or his designated representative, shall be held in an attempt to settle the grievance.

(a) If a satisfactory settlement cannot be obtained, the matter will be left to arbitration. No individual employee or member shall have the right to invoke arbitration without written consent of the Union. If such written consent is refused, the employee shall have no further recourse to the Company or the Union.

\* \* \* \* \* \*

ARTICLE 8
Discharge

\* \* \* \* \* \*

Section 2. If the Union finds after investigation that the employee has been discharged or laid off without cause, and that it cannot reach an adjustment after exhausting the grievance procedure, it may refer the case to the Arbitration Board for decision.

charge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Because these cases are not expressly governed by any federal statute of limitations, the appropriate statute of limitations to apply to this section 301/fair representation claim has been the subject of dispute.[4] The Supreme Court, however, in *DelCostello v. International Brotherhood of Teamsters,* ―― U.S. ――, ――, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983), has recently clarified the appropriate treatment of this issue. *DelCostello* involved a suit arising out of a discharge by the terminated employee against the employer and the union.[5] The employee alleged that his discharge was in violation of the collective bargaining agreement and that the union had not represented him fairly in the grievance procedure. *Id.* at ――, 103 S.Ct. at 2285. The district court applied Maryland's 30-day statute of limitations for actions to vacate arbitration awards to both the claim against the employer and the claim against the Union. *Id.* With respect to the appropriate statute of limitations to apply in these actions, the Supreme Court said:

> In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56 [101 S.Ct. 1559, 67 L.Ed.2d 732] (1981), we held that a similar suit was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action on a contract. We left two points open, however. First, our holding was limited to the employee's claim against the employer; we did not address what state statute should govern the claim against the union. Second, we expressly limited our consideration to a choice between two *state* statutes of limitations, we did not address the contention that we should instead borrow a *federal* statute of limitations, namely, § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). These cases present these two issues. We conclude that

**4.** Until *DelCostello v. International Brotherhood of Teamsters,* ―― U.S. ――, ――, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983), federal courts generally applied state statutes of limitations to these federal claims. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981). In *Mitchell,* the Court was presented with the problem of determining the appropriate state statute of limitations to apply to an employee's action against his employer under § 301. *Id.* at 58, 101 S.Ct. at 1561. The Court determined that the employee's suit was "... more analogous to an action to vacate an arbitration award than to a straight contract action." *Id.* at 62, 101 S.Ct. at 1563. Therefore, the Court held that the most appropriate state statute of limitations to apply was that used in actions to vacate arbitration awards. *Id.* at 64, 101 S.Ct. at 1564. In Illinois, a 90-day statute of limitations applies to this type of case. ILL.REV.STAT. (1981), ch. 10, Section 112(b).

The employee's claim against the *union* was not addressed by the *Mitchell* case, however, because only the employer sought *certiorari. Id.* at 60, 101 S.Ct. at 1562. Claims of this sort against unions have been given a treatment somewhat different than *Mitchell* by the lower federal courts. Thus, the Seventh Circuit has stated that:

> This Circuit, other federal Circuits, and the National Labor Relations Board have all held that breach by a labor union of its statutory duty of fairly representing members is an unfair labor practice under the National Labor Relations Act.

*Hall v. Printing and Graphic Arts Union, Local No. 3,* 696 F.2d 494, 498 (7th Cir.1982). Therefore, this court applied to fair representation claims the limitation period for unfair labor practice complaints before the National Labor Relations Board. *Id.* The applicable statute states in pertinent part:

> Provided ... no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made ....

§ 10(b) National Labor Relations Act, 29 U.S.C. § 160(b).

**5.** The Court decided *United Steelworkers of America, AFL–CIO–CLC v. Flowers,* with *DelCostello* due to the similarity of issues. *Flowers* also involved a suit against an employer for breach of the collective bargaining agreement and against a union for breach of the duty of fair representation. The Second Circuit applied New York's 90-day statute of limitations for vacation of arbitration awards to the claim against the employer. It then applied New York's three-year statute of limitations for malpractice actions to the claim against the union. The Supreme Court reversed with respect to both claims.

§ 10(b) should be the applicable statute of limitations governing the suit, both against the employer and against the union.

*DelCostello,* —— U.S. at ——, 103 S.Ct. at 2285 (emphasis in original) (footnotes omitted). Therefore, the statute of limitations to be applied in the case before us is the six month statute of limitations provided by section 10(b) of the National Labor Relations Act.[6]  *See Storck v. International Brotherhood of Teamsters,* 712 F.2d 1194 (7th Cir.1983).

## B.  *Is This Action Barred By The Statute of Limitations?*

■ The appellant contends that the statute of limitations does not bar her § 301 fair representation claim. Appellant's first argument in support of this contention is that the statutory period still has not begun to run because no "final determination" has been made of her grievance.[7]

In *Hall v. Printing and Graphic Arts Union, Local No. 3,* 696 F.2d 494 (7th Cir.1982), the plaintiff informed the union of her discharge and the union initiated discussions with the employer. The union refused to take the grievance to arbitration and notified the plaintiff that it would pursue her grievance no further. *Id.* at 496. In discussing the union's refusal to take the grievance to arbitration in connection with the issue of the appropriate statute of limitations to be applied to the employee's claim against the employer, we said:

> Nothing in the language of the collective bargaining agreement convinces us that decisions by the Local not to pursue an employee's grievance all the way to

arbitration are any less final or reliable than arbitration awards.

*Id.* at 497.

In the case before us, the appellant has alleged that under the collective bargaining agreement all cases of discharge are subject to the grievance procedure, that all grievances must be filed within five days and that the Union failed to initiate the grievance procedure. We believe, therefore, that under the language of the collective bargaining agreement, the failure and refusal of the Union to file the grievance within the specified time amounted to a final decision. This case, therefore, falls within the quoted language of *Hall* in that, under the collective bargaining agreement, the failure to file the grievance had the same finality effect as an arbitration award.

In *Bigbie v. Local 142, International Brotherhood of Teamsters,* 530 F.Supp. 402, 404 (N.D.Ill.1981), the plaintiffs requested that the union file a grievance on their behalf, but the union refused. The plaintiffs sought to have a different statute of limitations applied than that for vacation of an arbitration award because there had been no final and binding decision arising from an adjudication. *Id.* at 405. The court, in rejecting the plaintiffs' contention stated:

> From the employee's viewpoint a union's refusal to launch the grievance procedure is just as "final and binding" as a refusal to carry forward a grievance at any point after the procedure has been invoked.

*Id.* From the viewpoint of the plaintiff in the case at hand, therefore, the alleged "refusal and failure" of the Union to act amounted to a final determination.

---

**6.** Appellant also argues that the allegation of a cause of action based upon state law requires application of the five year statute of limitations period which Illinois law provides for the state law claim to all claims in the case. This contention has no merit. Appellant forgets that the complaint alleged two independent claims. One claim was a federal law claim which was a hybrid § 301 fair representation claim. As discussed above, the section 10(b) limitation period applies to this claim. The other claim was a pendent state law claim. The reliance upon the state statute of limitations for this second claim does not affect the

appropriate statute of limitations to be applied to the federal claim.

**7.** Appellant's contention that the statute has not yet begun to run raises the interesting issue whether any cause of action has yet accrued to the appellant. That is, the point at which the cause of action would normally accrue is the same point at which a statute of limitations would begin to run. We need not address this argument, however, due to our resolution of the case.

■ The appellant next argues that, even if the Union's alleged failure and refusal to take any further action did give rise to a cause of action, the statute still has not begun to run because neither defendant has informed her about the outcome of her request for the filing of a grievance. Both parties note the general rule that the limitations period begins to run "... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir.1962); *see also N.L.R.B. v. Don Burgess Construction Corp.*, 596 F.2d 378, 382 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). This case falls within the "should have discovered" prong of the *Hungerford* rule. At some point prior to six months preceding the time this action was brought, the appellant, in the exercise of reasonable diligence, should have discovered the acts constituting the alleged violation.

The violation alleged against the Union was a breach of its duty of fair representation by its failure and refusal to take any action on behalf of the appellant. This inactivity on the part of the union should have been discovered by the appellant prior to the six-month period preceding the initiation of this action. The appellant was discharged on January 15, 1981. Upon her discharge she notified the union, but the union failed to file a grievance within the five-day limitation under the collective bargaining agreement. The appellant has not alleged that she was misled by the Union as to its activities. As TRI points out, once a grievance has been filed within the required five day period, the contract requires it to be processed through various stages, up to arbitration, until a final decision is reached, which would bind the employee. The contractual provisions call for these proceedings to be exhausted, if the Union does not take the matter to arbitration, in approximately 23 days. Appellant knew, or at least should have known, that under the provisions of the contract the time to elect arbitration had arrived in late February or early March, 1981.

The appellant also alleges that she repeatedly requested the Union to process her grievance and the Union "failed and refused." It is uncontested that from May 5, 1981, until the present, the Union took no action at all. Since this action was brought on June 23, 1982, almost seven months of union inactivity preceded the six month statutory period. At some point prior to the six month statutory period, the appellant should have realized that the Union was taking no action on her behalf. The appellant cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these. Since the alleged violation, which consisted of union inactivity, should have been discovered by a reasonably diligent claimant prior to the statutory period, the *Hungerford* test is satisfied.

This result is consistent with the strong federal policy favoring the prompt resolution of labor disputes. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981).

> To choose a limitations rule in this case is to strike a balance between the right of an ex-employee to seek legal redress for an unlawful discharge from employment and the rights of an employer to be free of the risk of forever having to make salary payments to discharged employees and of the public to be free of the disruptive effects of lingering instability in labor relations.

*Hall*, 696 F.2d at 497.

We recognize, of course, that the Union should be encouraged to promptly notify the employee of its decision to pursue, or not to pursue, his or her claim and that this prompt action will help preserve any legal remedies available to the employee. To say, however, that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate.

■ The appellant's final contention is that the Union's conduct constituted a continuing violation of its duty of fair representation. In *Local Lodge No. 1424, International Association of Machinists v. N.L. R.B.*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) ("*Bryan Manufacturing*"), the Court set out the basic principles to be followed in applying the section 10(b) limitation period in light of the continuing violation·doctrine.

In *Bryan Manufacturing*, the General Counsel's complaints alleged that the execution of the collective bargaining agreement involved an unfair labor practice and, consequently, that the continuing enforcement of that agreement was illegal. *Id.* at 414, 80 S.Ct. at 825. The execution of the agreement occurred more than six months prior to the filing and serving of the complaints. *Id.* But the Board contended that the execution and the enforcement of the bargaining agreement constituted independent unfair labor practices. *Id.* at 415, 80 S.Ct. at 825. Even though the Board conceded that the statute of limitations (§ 10(b)) barred any complaint based upon the execution of the agreement, it contended that evidence as to the execution was admissible and relevant to determining whether conduct within the limitation period was unlawful. *Id.*

The Court, in *Bryan Manufacturing*, held that the General Counsel's complaints were time-barred. *Id.* The Court rejected the Board's contention about the significance of the earlier events by distinguishing two alternative situations:

The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

*Id.* at 416–17, 80 S.Ct. at 826–27 (footnote omitted). The Court stated that the General Counsel's complaints fell in the second category. *Id.* at 417, 80 S.Ct. at 827. The Court then went on to say:

The applicability of these principles cannot be avoided here by invoking the doctrine of continuing violation. It may be conceded that the continued enforcement, as well as the execution, of this collective bargaining agreement constitutes an unfair labor practice, and that these are two logically separate violations, independent in the sense that they can be described in discrete terms. Nevertheless, the vice in the enforcement of this agreement is manifestly not independent of the legality of its execution, as would be the case, for example, with an agreement invalid on its face or with one validly executed but unlawfully administered . . . . In any real sense, then, the complaints in this case are "based upon" the unlawful execution of the agreement, for its enforcement, though continuing, is a continuing *violation* solely by reason of circumstances existing only at the date of execution.

*Id.* at 422–23, 80 S.Ct. at 829–30 (emphasis in original).

Thus the outcome in *Bryan Manufacturing* and the discussion in that case of the doctrine of continuing violation in the § 10(b) context indicate that the appellant's reliance upon this doctrine is misplaced. In her complaint, the appellant alleges "[t]hat the defendant Union failed and refused to take any further action on the Plaintiff's discharge from May 5, 1981 to the present." In her brief on appeal, the appellant states:

"Since the union has acknowledged the fact that plaintiff's grievance has merit (R. 5, 127), its conduct in failing to resolve the matter amounts to a continuing violation of its duty of fair representation."

Since nothing other than union inactivity is alleged to have occurred since May 5, 1981, which is more than six months prior to the time this action was brought, the principles set out in *Bryan Manufacturing* bar the bringing of this action. That is, even if it is conceded that the Union's inactivity constituted a continuing unfair labor practice, it is only an unfair labor practice by reason of circumstances existing at or before May 5, 1981. The Union's inactivity in the instant case, like the enforcement of the bargaining agreement in *Bryan Manufacturing,* is, absent its earlier dereliction, lawful conduct. If this court were to permit the cloaking of this inactivity with illegality by invoking events which occurred more than six months prior to the bringing of this action, it would in effect be reviving a legally non-cognizable unfair labor practice.

Appellant cites *J. Ray McDermott and Co., Inc. v. N.L.R.B.,* 571 F.2d 850 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978) and *N.L.R.B. v. Basic Wire Products, Inc.,* 516 F.2d 261 (6th Cir. 1975), for the proposition that one need only file a complaint within six months of any one refusal "to perform certain functions." These cases, however, are not apposite here.

Both *McDermott* and *Basic Wire* involve the refusals of employers to bargain with unions. *J. Ray McDermott and Co., Inc.,* 571 F.2d at 858; *Basic Wire Products, Inc.,* 516 F.2d at 262. In each case, there was a specific instance within the six months prior to the time the action was brought in which the employer was actually approached and it refused to bargain. *J. Ray McDermott and Co., Inc.,* 571 F.2d at 858; *Basic Wire Products, Inc.,* 516 F.2d at 263. In each case, the court stated that the employer was under a duty to bargain and that each refusal, in and of itself, was a violation of that duty. *J. Ray McDermott and Co., Inc.,* 571 F.2d at 858; *Basic Wire Products, Inc.,*

516 F.2d at 268. In each case, the court required that the complaint be filed within six months of one such refusal.

*McDermott* and *Basic Wire* are inapplicable to the instant case for two reasons. First, in the case before us, there is no specific instance of refusal alleged to have occurred within the six months preceding the filing of this complaint. Only union inactivity is alleged. Second, in both *McDermott* and *Basic Wire,* the courts brought the cases within *Bryan Manufacturing* by finding that the specific refusal to bargain when the employer was under a duty to bargain was, in and of itself, an unfair labor practice. The court in *McDermott* stated:

> Our reasoning is not controlled by a conclusory labeling of the employer's duty or of his violation as a "continuing" one. Rather, we recognize that the primary purpose of the six-month rule is to assure prompt adjudications of disputes based on fresh evidence. McDermott's refusal to bargain was based on motives contemporaneous with its refusal to bargain on April 21, 1976. The filing of the complaint on April 29, 1976 brought those motives into question, and was timely with regard to the unfair labor charge alleged.

*J. Ray McDermott and Co., Inc.,* 571 F.2d at 858. In the case before us, it cannot be said that the Union's inactivity, in and of itself, constituted an unfair labor practice. It is similar to the enforcement problem in *Bryan Manufacturing.* Only by reference to other events can the vice in the inactivity be found. Since no other events are alleged to have occurred within the six months prior to this action, only events before that period could cloak the conduct with illegality.

We therefore find that the appellant's federal action against the Union and, consequently, her action against the employer are time-barred, and that the appellant's section 301/fair representation claims were properly dismissed.

### III. *The State Law Claim*

The second count of appellant's complaint alleges that TRI discharged her in retaliation for filing a workmen's compensation claim against TRI. Since this was a claim based upon Illinois law, the jurisdiction of the federal court could only have been pendent.

As discussed above, the federal claim, to which the state law claim was attached, was properly dismissed. Therefore, the district court properly exercised its discretion in dismissing the state law claim as well. As the Court stated in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants ... Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted). To dismiss the state law claim with prejudice, however, required more than the pretrial dismissal of the federal claim. *Id.* at 726–27, 86 S.Ct. at 1139; 13 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3567 at p. 451

(1975 and 1981 Supplement). The district court based its judgment upon the reasons set forth in the defendant-appellee's memorandum in support of its motion to dismiss. Because one of TRI's two reasons for dismissal of the state law claim was simply dismissal of the federal claim, the district court must have relied upon the second reason given by TRI to dismiss with prejudice.

TRI's second argument was based upon certain documents[8] attached to its motion to dismiss.[9] These documents show that the appellant's claim for workmen's compensation was filed on January 19, 1981, and that TRI received the form of Notice to Employer on or about January 26, 1981. Since the appellant alleged that she was discharged on January 15, 1981, or four days before she filed for workmen's compensation, TRI contends that the discharge could not have been in retaliation for filing the claim. In light of the documents produced by TRI and the failure of the appellant to adequately controvert TRI's evidence, this contention is dispositive.[10]

The district court's decision to dismiss both claims of the appellant is therefore

AFFIRMED.

---

**8.** These documents consisted of the following: An affidavit of the Director of Human Resources of TRI; A copy of an Application For Adjustment of Claim for Workmen's Compensation filed by the appellant with the Illinois Industrial Commission; A form of Notice to Employer of the filing of the appellant's claim with the Commission.

**9.** Because documents outside the pleadings were provided to the court, the motion is properly considered one for summary judgment. *See* FED.R.CIV.P. 12(b).

**10.** The appellant stated at oral argument that she had been receiving, prior to filing a compensation claim, some unspecified benefits from TRI because of her injury. TRI stated at oral argument that it was routine company policy to make payments to injured employees.

The appellant cites no authority and makes no argument as to why this additional fact

should make a difference. Since the payment of this money was a matter of company policy and not obtained as a result of filing a claim for workmen's compensation under the Illinois Workmen's Compensation Act, it seems irrelevant to the appellant's claim as set out in the complaint.

We also note that since the district court decided this case, this court, in *Lamb v. Briggs Manufacturing, a Division of Celotex Corp.,* 700 F.2d 1092, 1093 (7th Cir.1983), has held that Illinois law does not provide a tort cause of action for retaliatory discharge to an employee who is party to a collective bargaining agreement which only allows discharge for just cause. The appellant, in the instant case, alleged in her complaint that she was party to such an agreement (R. 2–3). Therefore, even if the contention of TRI, on which the district court based its judgment, was rejected, appellant's state law claim might still have to be dismissed with prejudice.