805 F.2d 1036
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Myra SMITH, Plaintiff-Appellant,
v.
The STANDARD OIL COMPANY, Defendant-Appellee.
 No. 85-4001.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1986.
 
 Before MILBURN and BOGGS, Circuit Judges, and HARVEY, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff Myra Smith appeals the district court's grant of summary judgment in favor of her former employer, The Standard Oil Company, in this hybrid wrongful discharge/breach of the duty of fair representation action brought under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. Because the district court correctly held that plaintiff's claim is time-barred by the six-month statute of limitations set forth in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), we affirm.
 
 I.
 
 2
 Construed in the light most favorable to plaintiff, the party who defended against the motion for summary judgment, see Bosely v. City of Euclid, 496 F.2d 193, 197 (6th Cir.1974), the facts are as follows:
 
 
 3
 Plaintiff was hired as a laborer at defendant's Toledo refinery on June 21, 1974. She eventually was transferred to the refinery laboratory where she tested gasoline and other petroleum products. Throughout her employment with defendant, plaintiff was a member of the Oil, Chemical and Atomic Workers' International Union, Local 7-346.
 
 
 4
 Plaintiff was discharged on July 20, 1982, for failure to provide a satisfactory excuse for a three-month absence from work. Plaintiff alleged that she was on sick leave. Plaintiff deposed she received notification of her termination in August 1982 and alleged that while still hospitalized, she contacted Union representative John Simmons on five separate occasions and that Simmons promised union action on her behalf. However, in her deposition, plaintiff summarized her discussions with Simmons and her reactions as follows.
 
 
 5
 A. Yes, I talked with John. I called him for about--I would say for about a month and a half to two months. And all that he could tell me was that they were pushing it. And then finally he came out and told me that I would do better to go through Civil Rights, I would get faster results, as the arbitration there would take two to three years; and he felt that maybe I would want to be back to work by then. But what he said wasn't too inspiring and neither too comforting. So that's when I decided to go through Civil Rights.
 
 
 6
 Q. When did you talk to Mr. Simmons, do you recall?
 
 
 7
 A. It was through September and October.
 
 
 8
 * * *
 
 
 9
 A. ... I told [Simmons] that I wanted to file [a grievance]. And he said, okay, he would be out to file it. And I haven't heard from him from that day to this one.
 
 
 10
 Q. When was this, do you recall?
 
 
 11
 A. This was in October of '82.
 
 
 12
 * * *
 
 
 13
 Q. When did you realize that they [the Union] were not going to do anything?
 
 
 14
 A. When he [Simmons] told me to go to Civil Rights.
 
 
 15
 Q. When was that?
 
 
 16
 A. That was in October.
 
 
 17
 Q. October of '82?
 
 
 18
 A. Yes.
 
 
 19
 Q. So basically you knew by October of '82 that the union would not push your grievance, as you felt they would not push your prior grievances?
 
 
 20
 A. Yes.
 
 
 21
 (Emphasis supplied).
 
 
 22
 On January 19, 1984, plaintiff filed this action in state court. Defendant removed the action to federal court. Following the taking of plaintiff's deposition, defendant moved for summary judgment which was granted on October 31, 1985.
 
 II.
 
 23
 The district court relied on Shapiro v. Cook United, Inc., 762 F.2d 49 (6th Cir.1985) (per curiam), wherein we stated:
 
 
 24
 [T]he general rule [is] that the [statute of limitations] begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.... In the instant case, the plaintiff should have reasonably discovered that his claim had accrued by operation of the collective bargaining agreement. Under similar circumstances, this court expressly stated in Badon v. General Motors Corp., 679 F.2d at 98, that an employer's decision will become final through the operation of the collectively bargained-for private system of dispute resolution.
 
 
 25
 Id. at 51 (citations omitted). The district court held that because the collective bargaining agreement provides that a grievance must be filed within five days after termination or it will automatically be rejected, plaintiff should have known that her cause of action accrued in August 1982.
 
 
 26
 The district court correctly interpreted the law as to when plaintiff's cause of action arose. In Shapiro, this court cited with approval Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299 (7th Cir.1983), cert. denied, 464 U.S. 1070 (1984). In Metz, the court observed:
 
 
 27
 In the case before us, the appellant has alleged that under the collective bargaining agreement all cases of discharge are subject to the grievance procedure, that all grievances must be filed within five days and that the Union failed to initiate the grievance procedure. We believe, therefore, that under the language of the collective bargaining agreement, the failure and refusal of the Union to file the grievance within the specified time amounted to a final decision.
 
 
 28
 Id. at 303.
 
 
 29
 Similarly, in the case at bar, plaintiff alleged in her complaint that the Union failed to file a grievance on her behalf. Accordingly, a final decision occurred once five days from plaintiff's termination passed without the Union having filed a grievance. Although plaintiff admits in her complaint that her employment was terminated on July 20, 1982, she deposed that she was informed of her discharge in August 1982. Giving plaintiff the benefit of the doubt by assuming that the date of discharge set forth in the collective bargaining agreement can be construed to mean the date the employee is so informed, plaintiff's cause of action must be held to have accrued sometime in August 1982 (no later than September 5, 1982).
 
 
 30
 However, the statute of limitations does not begin to run until plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Shapiro, 762 F.2d at 51. The district court was on firm ground in holding that plaintiff should have known her cause of action accrued after the five days passed because she is charged with knowledge of the terms of the collective bargaining agreement. See Shapiro, 762 F.2d at 51. However, plaintiff argues that this holding is in error in light of her deposition testimony that Union representative Simmons informed her in October 1982 that the Union was "pushing" the grievance. Thus, she argues, it cannot be concluded that she should have known the collectively bargained grievance procedure had been completed, thereby triggering the commencement of the running of the statute of limitations.[1]
 
 
 31
 However, unlike Shapiro and Metz, it is unnecessary in the present case to determine when plaintiff should have known the Union had refused to file her grievance because there is direct evidence that plaintiff actually knew the Union would not push her grievance in October 1982. As set forth above, plaintiff deposed that in October 1982 she realized the Union was not going to do anything about her grievance. Accordingly, the statute of limitations began to run, at the latest, at that time, and her action filed some fifteen months later was untimely.
 
 III.
 
 32
 We have considered plaintiff's remaining arguments and find them to be without merit. Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable James Harvey, Senior District Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 We reject plaintiff's assertion that her deposition testimony indicates the grievance had, in fact, been filed. First, this assertion conflicts with plaintiff's allegation in her complaint that the Union failed to file a grievance, as well as her later deposition testimony that Simmons never came out to file her grievance. Second, if the grievance was filed, this case would have to be dismissed as premature because plaintiff has not alleged any other date upon which the grievance/arbitration procedures concluded. See Metz, supra, 715 F.2d at 303 n. 7
 Plaintif responds that there is an exception to the exhaustion requirement where such action would be futile. Plaintiff has not, however, made any showing as to the basis of her claim of futility, see Monroe v. International Union, UAW, 723 F.2d 22, 25 (6th Cir.1983) (per curiam), or when it was apparent that the contractual remedies were futile, see Miller v. Jeep Corp., 774 F.2d 111, 114 (6th Cir.1985) (intraunion remedies).