**Michael SKROBACZ, et al., Plaintiffs,**

v.

**INTERNATIONAL HARVESTER, et al., Defendants.**

No. 83 C 5664.

United States District Court, N.D. Illinois, E.D.

March 16, 1984.

Anthony Intini, III, Intini & Intini, Chicago, Ill., for plaintiffs.

Sean F. O'Shea, Latham & Watkins, Hedlund Hunter & Lynch, William A. Widmer, III, Carmell, Charone & Widmer, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER [1]

SHADUR, District Judge.

Michael Skrobacz and twenty-one others have sued:

1. International Harvester Company ("IH") under Labor Management Relations Act § 301, 29 U.S.C. § 185 ("Section 301") for violations of a collective bargaining agreement (Count I) and under Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)") for failure to pay required benefits under the employees' retirement plan (the "Plan") (Count III); and

2. Automobile Mechanics Local No. 701 of the International Association of Machinists and Aerospace Workers ("Union") for breach of its duty of fair representation by failing to take plaintiffs' resulting grievances to arbitration (Count II).

IH and Union now move alternatively (1) for dismissal of the Complaint under Fed. R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim or (2) for summary judgment under Rule 56.[2] For the reasons stated in this memorandum opinion and order, summary judgment is granted in favor of IH on Counts I and III and in favor of Union on Count II.

### Facts

In September 1982 IH told Union the Melrose ReNew Center ("Center") had been sold and IH planned to close it October 29. Union and IH representatives then met to discuss the impact of the Center's closing on the employees.

On November 26 plaintiffs,[3] former Center employees, filed a grievance with Union relating to IH's treatment of sick leave, holiday leave and retirement and insurance benefits. In a separate November 26 letter plaintiffs also filed a charge against Union representatives who had engaged in negoti-

---

**1.** After both defendants had filed motions to dismiss, this Court's January 24 order set a briefing schedule. Defendants adhered to it; plaintiffs' counsel did not and are now fully a month late in that respect. Their total silence has continued even though each defendant filed, and served plaintiffs' counsel with, a supplemental memorandum calling attention to counsel's failure a week after the February 17 due date of their response. In accordance with this District Court's General Rule 13(b), this Court is deciding the matter without waiting further. Indeed, as the discussion at the end of this opinion reflects, plaintiffs' counsel's delinquency in that respect is all of a piece with their other conduct in this litigation.

**2.** Though Union did not (as did IH) designate its motion as one for summary judgment, it tendered supporting factual material by affidavit for consideration by this Court. Under the last sentence of Rule 12(b) that converted Union's motion as well into one for summary judgment under Rule 56. In fact such factual material was essential, given the Complaint's total omission of any dates at all (a matter mentioned later in this opinion). In any event plaintiffs' total default in adhering to the schedule set for their response leaves the facts uncontroverted (see the last two sentences of Rule 56(e)).

**3.** Because of the partial illegibility of the photocopies provided this Court, this opinion assumes all plaintiffs were signatories to the letters described in this section (the assumption most favorable to plaintiffs). That appears probable, given the fact the letters referred to (and were most likely drafted by) the same lawyers who filed this action for plaintiffs.

ations with IH about the Center's closing, claiming those unidentified representatives had failed to represent plaintiffs' interests properly. That second charge was lodged pursuant to Union's Constitution (the "Constitution"), not under the collective bargaining agreement.

On December 6 Union President Donald Gustafson ("Gustafson") responded with a letter stating (1) the conclusion plaintiffs' grievance and their charge against unnamed Union representatives lacked merit, (2) his reasons for that decision and (3) Union's decision not to pursue the matter to arbitration. At a December 20 Union meeting to which all former Center employees were invited, Gustafson and Union Vice President Gordon Frank explained Union's position on the grievance and actions it took in the negotiations with IH. Gustafson gave each member at the meeting a copy of his December 6 letter and a December 8 letter from IH as to sick leave benefits. On the following day Gustafson mailed those same materials to each Union member who had not been at the meeting. Union took no further action on the grievances identified in plaintiffs' November 26 letters, and plaintiffs did not appeal those decisions.

On January 26, 1983 plaintiffs reasserted their charges under the Constitution, this time naming four individuals who had assertedly failed to represent plaintiffs' interests properly in negotiations with IH. On February 3 Gustafson appointed a Trial Committee to investigate the matter. On February 16 the Committee recommended the charges be dismissed as nonmeritorious. On March 2 the Union membership voted to accept the Committee's recommendation and Gustafson wrote plaintiffs of the decision to dismiss the charges. Plaintiffs did not appeal that decision as provided for in Constitution Art. I, § 14.

IH's Manager of Employee Pensions David Clemens ("Clemens") stated (by affidavit) IH had received letters from plaintiffs dated November 26, 1982 and January 26, 1983 asking information about their pension and supplemental benefits. On February 23 [4] Clemens mailed a letter to plaintiffs' designated counsel, explaining why plaintiffs were not eligible for some benefits but might be eligible for others. Even though Clemens included in the letter a copy of the Plan's Claims and Review Procedure, plaintiffs took no further action in that respect.

Instead plaintiffs filed this action August 16, 1983. Though their counsel was fully aware of the location of both IH and Union, service was not effected on either defendant until December 16, 1983. In both instances that was over 120 days after suit was filed.

*Counts I and II*

■ IH and Union make the same two arguments against Counts I and II:

1. Under *Del Costello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the six-month statute of limitations (drawn from National Labor Relations Act § 10(b), 29 U.S.C. § 160(b) ("Section 10(b)")) bars plaintiffs' assertion of those two counts.

2. Plaintiffs also failed to exhaust the mandatory remedies prescribed by the Constitution and the collective bargaining agreement.

Because the limitations argument is unquestionably sound, the exhaustion issue need not be addressed.

*Del Costello* embraced Section 10(b)'s six-month limitation period as applicable both to actions against an employer for breach of the collective bargaining agreement and to actions against a union for breach of its duty of fair representation. Our Court of Appeals promptly made plain in *Metz v. Tootsie Roll Industries,* 715 F.2d 299, 303–04 (7th Cir.1983) (quoting with approval this court's decision in *Bigbie*

---

**4.** Clemens remailed the same letter to plaintiffs' lawyers March 21, after the first letter was returned as "Unclaimed."

v. Local 142, International Brotherhood of Teamsters, 530 F.Supp. 402, 404 (N.D.Ill. 1981)) the limitations clock began to tick when the employee "knew or should have known" his union was not going to process his grievance. Here that was true *not later than* Union's December 20, 1982 meeting, when it reconfirmed Gustafson's December 6 statement it would *not* pursue plaintiffs' grievance Union considered as plainly without merit.[5]

Consequently plaintiffs' August 16, 1983 filing of this action was clearly untimely. That compels dismissal of Counts I and II.[6]

### Count III

■ IH claims plaintiffs have not in fact exhausted their remedies under the Plan,[7] such exhaustion being a necessary prerequisite to this action. As IH correctly points out, plaintiffs must pursue those Plan remedies before they can maintain an action for benefits or for a declaration of their rights as participants under Section 1132(a)(1)(B). *Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Ironworkers*, 619 F.2d 645, 649 (7th Cir.1980); *Kross v. Western Electric Co.*, 534 F.Supp. 251, 253 (N.D.Ill.1982).

According to the Claims and Review Procedure under the Plan, a claim for Plan benefits must be filed with IH's Employees Pension Department. Written notice of any decision denying such a claim is provided, detailing the reasons for the denial and an explanation of the claim review procedure. Claimants then have the opportunity to appeal the denial to designated parties.

IH first argues plaintiffs' letters were not "claims" but merely requests for information. This Court will however indulge the inference (a reasonable one from the letters' language) plaintiffs *thought* they were making a claim. Even on that favorable assumption, plaintiffs' failure to take an appeal from the disposition of that "claim" prevents this action now.[8]

### Attorneys' Fees [9]

■ One matter remains.[10] Union has moved for an award of attorneys' fees and

---

**5.** There was certainly nothing ambiguous about Gustafson's detailed December 6 letter itself. But because this action was not filed between June 6 and 26, 1983 this Court does not have to decide whether plaintiffs "knew or should have known" as soon as they received the December 6 letter or not until December 26.

**6.** Union's convening of the Trial Committee to consider the charges of improper representation under the Constitution—a totally internal matter, which it was *obligated* to pursue—is wholly different from its asserting plaintiffs' claim against IH. There is no room for an inference that Union's internal resolution of those charges between January 26 and March 2, 1983 served to toll the running of limitations (by somehow changing what plaintiffs already "knew or should have known" about Union's intention not to process plaintiffs' grievance against IH). According this Court is also not called upon to decide whether the six-month limitation period is met by merely filing suit (see Rule 3) or whether, as Union Mem. 4 suggests, plaintiffs not only had to file suit but also (as they unquestionably did not do) *serve* defendants within six months—as Section 10(b) mandates for the filing of unfair labor practice charges. *NLRB v. Complas Industries, Inc.*, 714 F.2d 729, 732–33 (7th Cir.1983); *NLRB v. Local 264, Laborers' International Union of North America*, 529 F.2d 778, 782 (8th Cir.1976).

**7.** IH initially argues the Complaint does not adequately *allege* exhaustion. But Count III ¶ 15 says "Plaintiffs have performed all those necessary acts on their part to be performed both prior to and including the maintenance of this litigation." Under conventionally liberal pleading standards, that is enough to withstand a Rule 12(b)(6) motion.

**8.** Nothing in the record suggests such an appeal would be futile so as to excuse the exhaustion requirement. On the contrary, Clemens' Aff. ¶ 8 says plaintiffs are still entitled to pursue their administrative remedies under the Plan (a matter as to which this Court expresses no opinion).

**9.** Both the facts and the conduct of plaintiffs' counsel (even including the non-compliance with this District Court's General Rule 13(b)) are startlingly similar to those described in this Court's December 12, 1983 opinion in *Smith v. Jones Warehouse, Inc.*, No. 83 C. 4657. Accordingly this section has plagiarized freely from that opinion.

**10.** Much of this opinion or its footnotes seems to have been spent in describing issues it did *not* decide. And there is another. Even before the total delinquency of plaintiffs' counsel in responding to the current motion, they and their clients were involved in the questionable deci-

expenses because the claim against it has been pursued frivolously and in bad faith.

On January 3, 1984 Union's lawyer called plaintiffs' lawyer and then wrote him January 5 (see Ex. A), specifically calling his attention to *Del Costello* and *Metz* (among other reasons for dismissal) and asking that the suit against Union be dismissed to obviate the need for further legal costs to Union. Plaintiffs' lawyer rejected that request and said that Union should file a motion—despite Union counsel's warning of the risk of attorneys' fees liability for bad faith prosecution.

With a squarely applicable Supreme Court decision of such recent vintage having been cited to plaintiffs' counsel, no conceivable excuse exists for such intransigence. *Filing* of this action may well have been in good faith (*Del Costello* was just two months old on August 16, and *Metz* had not yet been decided),[11] but certainly its *continuation* after counsel's conversation described in Ex. A was a clear violation of 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In light of all the circumstances (coupled with counsel's current failure to respond, though that is not at all a controlling factor), this Court finds the continued assertion of the claim against Union, in the face of Union counsel's courtesy in identifying squarely applicable and unimpeachable

precedent, was both unreasonable and vexatious (and indeed reflected bad faith). See *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198 (7th Cir.1983).

Accordingly Union is entitled to an award of its attorneys' fees incurred after the lawyers' January 3 conversation. Because of the prospect of assessing fees on fees, it would be in no one's interest to compound the expenses involved by requiring an evidentiary hearing if one can be avoided—or if one is necessary, by failing to narrow the issues if possible. For that reason this Court will await notice from either party (with a copy to the other, of course) as to whether they have been able to reach agreement on all or part of the fees and expenses issues.

### Conclusion

There is no genuine issue as to any material fact, and defendants are entitled to a judgment as a matter of law. Both their motions for summary judgment are granted, and this action is dismissed. This Court will await further submissions on the issues of attorneys' fees and expenses.

---

sion to bring and proceed with this suit (discussed next in the text) and also the failure to pursue service on defendants as they were bound to do (discussed next in this note). Despite the fact both Union and IH were stationary targets whose location was well known to plaintiffs and their lawyers, process was not served on either defendant for more than the 120 days referred to in Rule 4(j). That factor alone, absent a showing of good cause, could have led to dismissal under that Rule. But in light of defendants' showings on the merits,

such a dismissal without prejudice would have been false judicial economy.

**11.** On the other hand, it is certainly unusual to encounter a complaint like that drafted by plaintiffs' counsel here, in which not a single date is alleged for any of the events spelled out in such detail. That might reasonably raise the question whether counsel was at least aware of potential time problems with the filing of the lawsuit.