Harry C. FISHER, Plaintiff,

v.

CPC INTERNATIONAL, INC., et al., Defendants.

No. 84–0068–CV–W–8.

United States District Court, W.D. Missouri, W.D.

June 15, 1984.
On Motions for Attorneys' Fees and Expenses July 26, 1984.

Bob J. Hiler, Kansas City, Mo., for plaintiff.

Leonard Singer, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants CPC International, Inc., Lawler, Anderson, Meyers, and Trewartha.

James R. Waers, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for defendants Harris and Nash.

## ORDER

STEVENS, District Judge.

Plaintiff filed this action for wrongful discharge and reinstatement in state court, naming as defendants his former employer, several supervisors, and two union officers. Defendants removed the action to this court and filed motions for summary judgment. Plaintiff responded with a motion to remand and a motion to dismiss the motions for summary judgment. All motions are now fully briefed.

Plaintiff was employed for nineteen years at Corn Products, a unit of CPC International, Inc. On January 28, 1982, a foreman observed plaintiff while on break drink from a bottle of Peppermint Schnapps concealed in a brown bag. Plaintiff denied he had been drinking. After an investigation, plaintiff was discharged for consuming alcohol on company property. Pursuant to the collective bargaining agreement, the Oil, Chemical and Atomic Workers Local 5–617 (hereinafter "the union") filed a grievance on plaintiff's behalf. On July 28, 1982, the matter was heard by an arbitrator, who upheld the discharge in an opinion issued October 1, 1982. Under the terms of the collective bargaining agreement, this decision under the grievance procedure is "final and binding upon the parties." Article IV, § 4 at 85.

Plaintiff's petition contains two counts. Count I purportedly states a claim for conspiracy to illegally discharge plaintiff because of his age. Plaintiff also challenges the fairness of the arbitration proceeding which upheld his discharge and the accuracy of the service letter later issued by his former employer. Count II pleads no readily identifiable cause of action, but reinstatement, punitive damages, and attorneys' fees are sought.

## I.

It is appropriate first to consider plaintiff's motion to remand, clumsily styled as "Motion to Set Aside Removal to Federal Court." Defendants' Joint Petition for Removal characterizes this action as one for breach of a collective bargaining agreement (29 U.S.C. § 185) and for age discrimination (29 U.S.C. § 626); accordingly, defendants sought removal of these federal questions under 28 U.S.C. § 1441(b). In support of his motion to remand, plaintiff argues that his petition does not name the union as a defendant and makes no claim the union breached its duty to fairly represent him; instead, plaintiff "alleges conspiracy based on actions of individuals in their individual capacity, as well as in their Union capacity." *Suggestions in Support of Plaintiff's Motion to Set Aside Removal* at 1 (filed February 10, 1984). Plaintiff also notes that the petition does not refer to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* In short, plaintiff characterizes this action as a state tort claim; defendants characterize it as raising removable federal questions.

 "When principles of federal labor law are involved, they supersede state contract law or other state law theories." *Fristoe v. Reynolds Metal Co.,* 615 F.2d 1209, 1212 (9th Cir.1980). "The complex regulatory scheme of federal labor law may not be avoided by merely artful pleading of a state cause of action." *Universal Communications Corp. v. Burns,* 449 F.2d 691, 692 (5th Cir.1971). Plaintiffs' petition is anything but an exercise in artful pleading, which makes it all the more obvious that plaintiff's claims are essentially federal.

Plaintiff alleges that his discharge was the result of a conspiracy by defendants to rid the company of an older employee who would soon be eligible for retirement benefits. He challenges the truth of the charge against him and the fairness of the arbitration hearing which upheld his discharge. Although union officers rather than the union itself are named in the caption as defendants, certain allegations make it painfully obvious that the union is a *de facto* defendant. For instance, "Defendant, Larry Harris, as well as the Union itself, can be served" at union headquarters. *Petition,* Count I, ¶ 5. "[T]he union did not see that an attorney was appointed"

for plaintiff at the arbitration hearing, and after he was discharged, "Defendant Union, made no further effort to protect the interests of this Plaintiff, under the Union contract." *Id.* ¶ 8. In paragraph 9, plaintiff again complains that he "was not afforded legal counsel, even though the Union, one of the Defendants in this action, states that a person under these circumstances would be afforded an attorney in a hearing." Under Count II, "Plaintiff prays judgment for punitive damages against the Defendant Corporation, the Union and each separately named Defendant for the sum of One Million Dollars ($1,000,000.00) as well as for his actual damages ...." Finally, although plaintiff never cites the ADEA, "he feels the reason for his discharge, as stated above, was because of his age ...." *Id.* Count I, ¶ 9.

Plaintiff's Motion to Set Aside Removal is defeated by the allegations of his own petition. This ill-considered attempt to divert the court's attention from defendants' motions for summary judgment will be denied. Likewise, plaintiff's Motion to Dismiss Defendants' Combined Motions for Summary Judgment will be denied.

## II.

Two motions for summary judgment by defendants are pending: the first by the employer and supervisory personnel (hereinafter the "employer defendants") and the second by the two union officers (hereinafter the "union defendants"). In considering these motions, it is helpful to construe plaintiff's petition as stating three causes of action. Plaintiff's first claim is for breach of the collective bargaining agreement by the employer and for breach of the duty of fair representation by the union (although technically not a defendant). Plaintiff's transparent attempt to relabel these federal claims as a conspiracy must be rejected, for the reasons previously discussed. Plaintiff's second claim is for age discrimination, which must be brought under the ADEA since there is no other federal or state remedy for age discrimination. Plaintiff's third claim is for violation of the

Missouri Service Letter Statute. The court has extracted these three theories from Count I; Count II pleads no separate cause of action but merely seeks remedies based on the theories set forth in Count I.

In framing their motions, defendants have construed the complaint in a similar fashion and have advanced arguments for summary judgment as to each cause of action. The court will address each cause of action in turn.

### A.

■ The law pertaining to suits alleging an employer's breach of collective bargaining agreement and a union's breach of the duty of fair representation has been summarized recently by the Supreme Court:

It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement.... Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.... Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement.... In *Vaca* [*v. Sipes*, 386 U.S. 171, [87 S.Ct. 903, 17 L.Ed.2d 842] (1967)] and *Hines* [*v. Anchor Motor Freight*, 424 U.S. 554 [96 S.Ct. 1048, 47 L.Ed.2d 231] (1976)], however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding.... Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], since the employee is alleging a breach of the collective bar-

gaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" ... The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, —— – ——, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (U.S. 1983) (citations and footnote omitted). *Del-Costello* held that such claims against an employer and a union are subject to the six-month statute of limitations found in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), a holding upon which defendants here rely since the arbitration decision upholding plaintiff's discharge was rendered October 1, 1982, but plaintiff did not commence this action until December 14, 1983. Defendants also point out that *DelCostello* has been applied retroactively in this circuit. *Lincoln v. District 9 of International Association of Machinists and Aerospace Workers*, 723 F.2d 627 (8th Cir.1983).

In the face of seemingly clear precedent, plaintiff responds with several arguments. First, plaintiff asserts that "[t]he Statute of Limitations of six (6) months to bring suit on the basis of a Union's breach of its duty of fair representation contemplate [*sic* ] good faith on the part of the Union."[1] *Plaintiff's Suggestions in Opposition to Defendants' Combined Motions for Summary Judgment* at 6 (filed February 10, 1984) (hereinafter *Plaintiff's Suggestions* ). Defendants attack this assertion as "stupid" and "ludicrous," which is a blunt but nonetheless accurate characterization of plaintiff's argument. Plaintiff's proposed distinction between good faith and bad faith breaches of duty finds absolutely no support in *DelCostello*, which involved allegations that the union had represented the employee "in the grievance procedure 'in a discriminatory, arbitrary and perfunctory manner.'" 103 S.Ct. at 2286. The case consolidated with *DelCostello* alleged "that the union's 'preparation, investigation and handling' of respondents' grievances were 'so inept and careless as to be arbitrary and capricious,' in violation of the union's duty of fair representation." *Id.* Such allegations and good faith are essentially mutually exclusive. *See Curtis v. United Transportation Union*, 700 F.2d 457, 458 (8th Cir.1983) (negligence, poor judgment or ineptitude are insufficient to establish a breach of duty). To limit *DelCostello* to oxymoronic cases in which a good faith breach of duty is alleged would effectively nullify the decision. Plaintiff would no doubt welcome this result; indeed, he invites this court to overrule the Supreme Court, citing as authority the dissents of Justices Stevens and O'Connor in *DelCostello*. *Plaintiff's Reply to Defendant's [sic] Response to Plaintiff's Combined Answer to Defendant's [sic] Motions for Summary Judgment* at 1–2 (filed March 15, 1984) (hereinafter *Plaintiff's Reply* ). Although plaintiff's briefing is replete with distinctly dubious assertions, this argument surely marks a nadir in legal reasoning.

Second, plaintiff makes several arguments under the general rubric that summary judgment is inappropriate. The court is well aware that summary judgment is not favored and is appropriate only if no

---

**1.** Plaintiff cites *"Del Costello vs. International Brotherhood of Teamsters, Etc.,* 545 F.2d 334 (8th Circuit 1976) [*sic* ]" in support of this proposition, which is obviously an incorrect citation. The citation given leads the reader to a point midway in the opinion of the *Second* Circuit in *United States v. Vispi,* 545 F.2d 328 (2d Cir. 1976), in which a criminal prosecution for fail- ure to file tax returns was dismissed because the defendant had not been accorded a speedy trial under the sixth amendment. Ordinarily, the court would disregard an occasional error such as this, attributing it simply to poor proofreading. However, plaintiff's suggestions are plagued with errors of all kinds, as subsequent discussion will illustrate.

material facts are in dispute. Plaintiff attempts to create a material issue of fact by filing an affidavit that defendants conspired against him and then calling attention to defendants' failure to file any counteraffidavit: "The very fact that Defendants have failed to deny such conspiracy, in light of charges to the same in Plaintiff's Complaint, looks suspicious to this writer." *Plaintiff's Reply* at 2. Suspicion alone is insufficient to create a material issue of fact. In the first place, plaintiff has no cause of action for conspiracy since federal labor law preempts this area. *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253–54 (2d Cir.1970) ("The allegation of 'conspiracy' is nothing more than a makeweight which adds nothing to the substance of the allegations against the individual defendants."), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). Even if a claim of conspiracy were cognizable, it is not actionable if time-barred, which is precisely what defendants allege. Moreover, limitation questions are quite appropriate for summary disposition. *See, e.g., Lincoln*, 723 F.2d 627.

Finally, plaintiff argues that *DelCostello* leaves open the possibility that the six-month statute of limitations is subject to equitable tolling. 103 S.Ct. at 2294. Plaintiffs fails, however, to offer any factual basis for his claim that tolling is appropriate here. In an affidavit filed by the union defendants, union steward Ernest W. Workman states that although the arbitration decision was rendered October 1, 1982, he was unable to personally notify plaintiff of the decision until later that same month, at which time he also informed plaintiff that the union had done all it could. Even if such facts would warrant equitable tolling, it was still more than a year until plaintiff filed this suit, well beyond the six-month limitations period.

Recognizing, perhaps, this gaping hole in his tolling argument, plaintiff states that suit was first commenced on July 5, 1983, and later dismissed without prejudice. "The present suit was brought within the statutory period for refiling. Therefore, any statute of limitation problems must be reviewed in light of the July 5, 1983 date." *Plaintiff's Suggestions* at 6. Plaintiff's attempt to take refuge in an unspecified savings statute is misguided at best, frivolous at worst. The court can only assume that plaintiff refers to the Missouri savings statute (Mo.Ann.Stat. § 516.230 (Vernon 1952)), which on its face applies only to actions commenced within the times specified under certain Missouri statutes of limitation. It obviously has no relevance to the timeliness of a suit arising exclusively under federal labor law. Even assuming it did, the first complaint was filed more than six months after the end of October, 1982, when plaintiff learned of the adverse arbitration decision. Finally, it should be noted that CPC was the only defendant in the first action.

Plaintiff's claim for breach of the collective bargaining agreement and the duty of fair representation is undoubtedly time-barred under *DelCostello*. Accordingly, it will be dismissed.

### B.

Defendants attack plaintiff's claim for age discrimination as untimely.[2] No civil action may be commenced under the ADEA until sixty days after the employee has filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC); moreover, the administrative charge of discrimination must be filed "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1).

Plaintiff has to this day never filed a charge of age discrimination with the EEOC. Although this would seemingly settle the issue, plaintiff thinks not. Plaintiff first argues the statute has been tolled because notices advising employees of their rights under the ADEA were not conspicuously posted in the workplace, and plaintiff

---

**2.** The union defendants are uncertain if the claim of age discrimination is even directed against them. Certainly, the union or its agents have no authority to discharge an employee of CPC.

has filed an affidavit to this effect. However, plaintiff does not state in his affidavit that he was unaware of his rights under the ADEA or that he in any way relied to his detriment on CPC's alleged failure to post notices conspicuously.[3] Of course, this tolling argument is devoid of substance since plaintiff has never filed a charge of discrimination—nearly one year after he first sued CPC, more than a year and a half after the unfavorable arbitration decision, and more than two years after his discharge.

■ Plaintiff's other argument is that his reliance on grievance procedures under the collective bargaining agreement should toll the limitations period under the ADEA. Even if this were not a dubious legal proposition (*see International Union of Electrical, Radio and Machine Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 236–40, 97 S.Ct. 441, 446–49, 50 L.Ed.2d 427 (1976) (existence and utilization of grievance procedures does not toll limitations period under Title VII)), it is factually untenable because the arbitration decision had been rendered and communicated to plaintiff more than a year before he filed this action and more than eight months before even the first suit was filed. Once the grievance procedures were exhausted, plaintiff cannot be heard to argue that further tolling is warranted.

Accordingly, plaintiff's claim for age discrimination will be dismissed as untimely.

### C.

■ Finally, plaintiff's claim for a false service letter is barred by the adverse arbitration decision, under principles of collateral estoppel. *Cooper v. Yellow Freight System, Inc.*, 589 S.W.2d 643 (Mo.App. 1979). Since plaintiff does not even address this issue, it suffices to note that the truthfulness of the service letter depends on whether plaintiff did in fact consume

alcohol at work, and the arbitrator specifically found that he did.

### III.

The only substantial issue remaining for consideration is whether attorney's fees should be awarded to defendants.[4] The employer defendants seek fees as part of their motion for summary judgment; the union defendants have filed a separate motion, requesting the opportunity to brief the issue further if summary judgment is granted. Plaintiff has filed a brief response affirming his good faith pursuit of this action:

> We live in America, not the Soviet Union, and Plaintiff believes there is still room in this country for good faith argument, without the threat of attorney's fees. This writer does not believe the Courts of the United States wish to penalize those who would mold our laws. Hence, Plaintiff moves this Court to deny Defendants' Request for attorney's fees.

*Plaintiff's Response to Defendants' Motion for Attorney's Fees* at 2 (filed March 15, 1984).

Plaintiff's view of this case and the legal system in general might charitably be described as quixotic. Obviously, defendants take a less charitable view and seek compensation for their involuntary service as windmills. Defendants' position appears to have considerable merit, but the court will reserve a final decision on the issue of attorney's fees pending further briefing.

Judge Bartlett has recently considered the issue of attorney's fees in a similar suit. *Taylor v. Belger Cartage Service, Inc.*, 102 F.R.D. 172 (W.D.Mo.1984). The clerk will be directed to forward a copy of the decision to counsel for all parties to assist in the presentation of similar issues here. Defendants should submit affidavits and time records to support their claims. In framing their response, plaintiff and his counsel should realize that the court will be

---

**3.** Plaintiff does not state the notices were not posted; he merely alleges they were not posted *conspicuously.*

**4.** Several miscellaneous contentions raised by plaintiff are insubstantial and warrant no discussion, *e.g.*, that these private defendants "robbed" plaintiff of his constitutional rights.

particularly interested to learn why they persisted in this action in the face of clearly adverse controlling precedent on virtually every issue. In light of the record developed thus far, plaintiff and his counsel should come forth with more than bald assertions of good faith.

## IV.

For the reasons stated, it is

ORDERED that plaintiff's Motion to Set Aside Removal to Federal Court is denied. It is further

ORDERED that plaintiff's Motion to Dismiss Defendants' Combined Motions for Summary Judgment is denied. It is further

ORDERED that the Motion for Summary Judgment filed by defendants CPC International, Inc., Lawler, Anderson, Meyers, and Trewartha and the Motion for Summary Judgment filed by defendants Nash and Harris are granted. Summary judgment shall be entered against plaintiff and in favor of all defendants on all causes of action asserted in plaintiff's petition. It is further

ORDERED that costs will be taxed to plaintiff. It is further

ORDERED that additional briefing by defendants on their motions for attorney's fees shall be filed within fifteen days. Plaintiff and his counsel shall respond within ten days thereafter. It is further

ORDERED that copies of this order shall be forwarded to counsel for plaintiff by both regular and certified mail.

## ON MOTIONS FOR ATTORNEYS' FEES AND EXPENSES

On June 5, 1984, the court granted defendants' motions for summary judgment on all claims by plaintiff and directed further briefing on defendants' motions for attorneys' fees and expenses. This lawsuit arose after defendant CPC International, Inc. discharged plaintiff for consuming alcohol at work. As construed by the court, plaintiff's petition contained three theories of recovery. First was a claim for breach of the collective bargaining agreement by the employer and for breach of the duty of fair representation by the union defendants. The court dismissed those allegations as clearly time-barred under *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiff's age discrimination claim was also time-barred since he had never filed—timely or otherwise—a charge of discrimination with the Equal Employment Opportunity Commission as required by 29 U.S.C. § 626(d)(1). The court found plaintiff's service letter claim precluded by an adverse arbitration decision under principles of collateral estoppel, a result plaintiff did not even attempt to forestall. *Cooper v. Yellow Freight System, Inc.*, 589 S.W.2d 643 (Mo.App.1979).

In directing further briefing on the issue of attorneys' fees, the court admonished plaintiff and his counsel as follows:

> In framing their response, plaintiff and his counsel should realize that the court will be particularly interested to learn why they persisted in this action in the face of clearly adverse controlling precedent on virtually every issue. In light of the record developed thus far, plaintiff and his counsel should come forth with more than bald assertions of good faith.

Instead of responding as expected, counsel for plaintiff promptly "advise[d] the Court they are withdrawing as Attorneys of Record," purportedly because plaintiff is seeking other representation. Counsel are apparently unfamiliar with Local Rule 1H, which provides:

> Counsel may not be relieved from further representation of a client without obtaining leave of court. Such leave will ordinarily be denied unless entry of appearance by substitute counsel is assured or has occurred.

No substitute counsel has yet entered an appearance; accordingly, counsel will not be granted leave to withdraw. In addition, even if counsel were allowed to withdraw, they could not thereby escape any liability

which may arise from their previous conduct of this litigation.

Although for a time it seemed this ineffectual withdrawal would be the extent of any response by plaintiff or his counsel, Plaintiff's Answer to Defendant's [*sic*] Brief Concerning Motions for Attorney's Fees and Expenses of Litigation was eventually filed, stating in full as follows:

> Comes now Bob J. Hiler, the attorney who did represent Harry C. Fisher, and advises the Court that he did not receive copies of the Defendant's [*sic*] pleadings until he returned from vacation during the week of June 25th.
>
> In answer to the Defendant's REquest [*sic*], said attorney advises the Court that he felt that he was doing the proper thing in filing this case against the Defendants, he feels that the Plaintiff was discharged illegally, but the Court has ruled against the Plaintiff, and this is the reason for the Defendant's Motions.
>
> Said attorney advises the Court that he is willing to accept responsibility for any Orders thaat [*sic*] are entered by the Court in reference to attorney's fees and expense of litigations, and will try to see to it that these matters are paid as soon as possible.

This feeble response offers no explanation why counsel "felt" he did the proper thing or why he "feels" plaintiff was discharged illegally. Moreover, counsel's erroneous assertion that the court's previous ruling against plaintiff is the reason for the present motions suggests a fundamental misapprehension of the issue presently before the court. Defendants seek fees not because plaintiff and his counsel pursued this action and lost; rather, defendants seek fees because they assert plaintiff and

his counsel pursued this action well knowing it was factually and legally untenable from the outset. Counsel's subjective—and apparently blind—faith in plaintiff's position does not discharge his responsibility to investigate the factual and legal bases of plaintiff's claims and in fact ignores the inherent obligation of counsel to his client and the court.

■ The statement by Mr. Hiler is tantamount to an admission of liability for attorneys' fees and expenses and might arguably suffice to justify such an award; however, the court has not heard from plaintiff or his other attorney, Mr. Wonder. Thus, if liability for fees and expenses is to be imposed on all three men, as requested by defendants, further review of this litigation is necessary.[1] After full consideration of the record, the court has concluded that plaintiff's claims were hopelessly flawed from the beginning and were pursued recklessly, vexatiously, and in bad faith. Several observations underscore this inescapable conclusion.

First, in an action filed July 5, 1983, Mr. Hiler on behalf of plaintiff advanced essentially identical claims against defendant CPC International, Inc.[2] After several months of prodding, counsel for CPC persuaded plaintiff to dismiss the case, based on the same authority later cited in this court's order of June 5, 1984. Little more than two months after voluntarily dismissing the first action, plaintiff on December 14, 1983, filed this action in state court against not only CPC but also several supervisory personnel and two union officers. Counsel for the employer defendants promptly sent Mr. Hiler a letter reiterating that plaintiff's claims were barred as a matter of law based on the same authority,

---

**1.** Neither plaintiff nor his counsel have requested a hearing although the order of June 5, 1984, emphasized the gravity of the instant motions. In addition, the union defendants' brief acknowledges that "plaintiff and his attorneys are entitled to a hearing on the substantive issue of attorney fees as well as the amount and apportionment of such fees." *Union Defendants' Suggestions in Support of Request for Attorney Fees* at 2. Although apprised of this right, plaintiff and his counsel have not requested a hearing;

therefore, they have apparently waived a hearing and are prepared for decision on the present written record.

**2.** The nominal defendant in that action was "Corn Products Inc.," which is a unit of CPC International, Inc. For purposes of this discussion, the distinction is immaterial since the petition in the first action acknowledged this close relationship.

which was once again cited for the benefit of plaintiff's counsel, and announcing that attorneys' fees would be sought if plaintiff persisted in this litigation. Plaintiff and his counsel were not dissuaded, however, and defendants soon answered and filed motions for summary judgment.

Plaintiff's responses to these substantive challenges further reveal the frivolous nature of this suit. The "Motion to Set Aside Removal to Federal Court" took the preposterous position that no claim had been stated against the union, yet plaintiff's petition at various points specifically referred to the "Defendant Union." Plaintiff further argued that since the petition contained no specific citation to the Age Discrimination in Employment Act (ADEA), there was no removable federal question, yet the petition alleged plaintiff was discharged "because of his age." Plaintiff offered no authority to support any of his spurious arguments for remand.

Plaintiff's suggestions in opposition to the motions for summary judgment consisted mainly of non sequiturs, errors, and contradictions. For instance, plaintiff filed an affidavit alleging defendants had conspired to discharge him and then found great significance in their failure to file any counteraffidavits denying a conspiracy. Of course this affidavit was irrelevant since any such conspiracy claim is preempted by federal labor law; moreover, plaintiff's affidavit failed to address defendants' argument that his claim, even if true, was time-barred. Likewise irrelevant was plaintiff's broadside against summary judgment, which overlooked the many cases deciding limitations questions summarily.

The most glaring substantive error in plaintiff's suggestions was the analysis of *DelCostello*. Based on no authority, plaintiff concluded the six-month limitations period applied only to good faith breaches of duty. When defendants in reply pointed up the absurdity of this assertion, plaintiff responded by attacking the six-month limitations period and citing the dissenting opinions in *DelCostello*. Counsel for the employer defendants repeatedly cited *DelCostello* to plaintiff's counsel before and after this action commenced, but the mes-

sage was not heeded. "With a squarely applicable Supreme Court decision of such recent vintage having been cited to plaintiffs' counsel, no conceivable excuse exists for such intransigence." *Skrobacz v. International Harvester*, 582 F.Supp. 1192, 1196 (N.D.Ill.1984) (referring to *DelCostello* and awarding fees). Counsel for the union defendants even sent a copy of *Skrobacz* to plaintiff's counsel but to no avail.

The contradictions in plaintiff's arguments are most glaringly apparent on the age discrimination claim. Although in urging remand plaintiff argued that his petition did not cite the ADEA, his suggestions in opposition to the motions for summary judgment discussed at some length the ADEA and its limitations period. In response to defendants' argument that plaintiff's age discrimination claim was barred for failure to file an administrative charge of discrimination within 180 days after discharge, plaintiff came forth with several ridiculous arguments. He first referred to the 300-day limitations period applicable in states with age discrimination laws, neglecting however to mention that Missouri was not one of those states. Moreover, plaintiff's claim was barred even under the 300-day rule since he *never* filed a charge of discrimination. In an attempt to explain this fatal oversight, plaintiff's counsel offered a muddled discussion of equitable tolling, unsupported by any verified statement by plaintiff that he was unaware of his rights under the ADEA for any length of time; instead, plaintiff merely declared that antidiscrimination notices had not been posted conspicuously in the workplace. Finally, counsel took refuge in an unspecified savings statute, leaving the court to guess which one. Not only was this argument devoid of legal support, it was factually untenable since even the first action began more than 180 days after plaintiff learned of both the discharge and adverse arbitration decision.

Further examples of irrelevant, erroneous, and contradictory assertions by plaintiff could be cited, but they would only reinforce the conclusion that plaintiff's claims were factually and legally untenable from the very beginning, and plaintiff's

counsel knew or should have known so. Nevertheless, they persisted in this baseless and frivolous litigation, attempting to justify it with atrocious legal reasoning. No reasonable attorney of average competence would have filed or pursued this lawsuit; counsel for plaintiff proceeded recklessly and in bad faith. Consequently, attorneys' fees and expenses will be awarded based on Fed.R.Civ.P. 11, the bad faith exception to the American Rule on attorneys' fees, and 28 U.S.C. § 1927.[3]

As recently amended, Rule 11 provides that every pleading, motion, or other paper shall be signed:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The previous discussion demonstrates this action had no reasonable basis in law or fact from the very beginning. Plaintiff's legal arguments were formulated not after reasonable inquiry but seemingly at whim.

Under the American Rule, each party shall bear his own attorneys' fees; however, "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" fees may be awarded.

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Such conduct was clearly present here; therefore, this court has inherent authority to assess attorneys' fees. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980).

Finally, 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As stated before, counsel have acted unreasonably and vexatiously. Since this action should never have been filed, all amounts incurred by defendants are recoverable as "excess" costs, expenses, and fees under section 1927.

Although an award under section 1927 can only be imposed against counsel, under the other authority previously discussed this court can order both plaintiff and his counsel to pay defendants' fees and expenses. *See Roadway Express,* 447 U.S. at 766–67, 100 S.Ct. at 2464; Fed.R.Civ.P. 11. Defendants seek judgment for fees and expenses against plaintiff and his attorneys, Mr. Hiler and Mr. Wonder. Although Mr. Hiler has come forward to accept responsibility for any such award, the court can see no reason to limit defendants' ability to collect their judgments. Although counsel probably deserve much of the blame, plaintiff should not escape responsibility for the conduct of his agents. *See Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 915–16 (11th Cir.1982). Since plaintiff has failed to come forward and explain his reasons for pursuing this action, the court can only assume he authorized the filing of this action only two months after a previous similar action had been dismissed for reasons he presumably knew.

---

**3.** Defendants have suggested other possible bases for an award of fees, but the three bases cited in the text offer ample authority in a case as egregious as this. Accordingly, the court finds it unnecessary to reach defendants' other contentions.

He also signed an affidavit as part of the response to the motions for summary judgment. The court has no reason to believe that affidavit was false, but as already explained, the affidavit was interposed as part of a vexatious and irrational effort to harass defendants and confuse the issues. Under these circumstances, plaintiff will be assessed fees and expenses under Rule 11 and for bad faith pursuit of this action.

Neither plaintiff nor his counsel have come forward with any evidence of limited financial resources. *See Taylor v. Belger Cartage Service, Inc.*, 102 F.R.D. 172, 183 (W.D.Mo.1984). Therefore, the court will presume all three individuals are able to satisfy a judgment for fees and expenses. Any presumption to the contrary would simply reward plaintiff and his counsel for their almost total failure to respond to the instant motions.

The amount of the fee award remains to be determined. Counsel for the employer defendants has submitted verified time records showing that he expended 33.45 hours in defending this action. His hourly rate is $95 per hour, so the total fee requested is $3177.75. The number of hours expended is quite reasonable and the hourly rate is within the range of those charged in this community by attorneys of Mr. Singer's caliber. The fee of $3177.75 requested is therefore approved along with reasonable expenses of $472.22.

Counsel for the union defendants has submitted verified time records showing that he expended 48.25 hours in defending this action. His hourly rate is $60 per hour, so the total fee requested is $2895. The number of hours expended is reasonable, and the hourly rate is rather modest for this community, particularly for an attorney with Mr. Gordon's qualifications and experience. The fee of $2895 requested is therefore approved along with reasonable expenses of $66.30.

For the reasons stated, it is

ORDERED that the Employer Defendants' Motion for Attorneys' Fees and Expenses of Litigation is granted. Judgment in the amount of $3649.97 for attorneys' fees and expenses is hereby entered in favor of defendants CPC International, Inc., Robert Lawler, Jim Anderson, Paul Meyers, and Frank Trewartha and against Harry C. Fisher, Robert J. Hiler, Robert E. Wonder, and each of them. It is further

ORDERED that the union defendants' Request for Attorney Fees is granted. Judgment in the amount of $2961.30 for attorneys' fees and expenses is hereby entered in favor of defendants Larry Harris and George Nash for the use and benefit of the Oil, Chemical and Atomic Workers Local No. 5–617 [4] and against Harry C. Fisher, Robert J. Hiler, Robert E. Wonder, and each of them.

---

**4.** The union, a *de facto* defendant in this action, assumed the legal expenses of its past president Harris and current president Nash.